Chancellor Rutledge
delivered the decree of the court:.
Complainant’s bill states that he was applied to by defendant, W. B. Mitchell on his own and his brother the defendant I» Mitchell’s account, to become purchasers of the plantation in hill mentioned, and a considerable number of negroes; that complainant sold them the plantation for 9400k and 137 negroes for 8905k They agreed to pay the sum of 8905k with interest from April, 1794,-. in three equal annual instalments; and 9400k in six annual instalments. They proposed to give bonds for the purchase money, and mortgages not only of the abovet. mentioned property, but also of 100 other negroes; and a plantation of the said John Mitchell as a security for the payment thereof — That the said W. B. Mitchell took possession of the said plantation and negroes — That lie and the defendant John Mitchell have invariably exercised acts of ownership over the property ever since, and are now in actual possession of it; and uniformly refuse to fulfil their part of the contract. The bill therefore prays a specific performance of the agreement and payment to complainant of what he is entitled to receive from them. The defendants in their answer admit the purchase of the lands and negroes; that the land whs to be paid for in six annual instalments; but insist that the negroes were to be paid for iiy five annual instalments; and refer *481 to exhibit A. to prove it. They also admit the agreement to make the mortgages; but insist they were to be made in such mode only as is set forth in the answer. And they admit the possession of the property and exercising acts of ownership over it. The answer of defendant, W. B. Mitchell, then states various other matters, such as loss of crop by freshets, against which he asserts complainant warranted; and that several negroes died with the whooping cough for which complainant was liable; and that many of them were diseased and not taska-ble; all of which were causes for abatement or reduction in the price of the property. The importance of this case arises more from the magnitude of the debt than any intricacy in the subject. The questions for the determination of the coui't are two. What was the time stipulated for payment of the negroes, and whether any and what allowance ought to be made on account of the losses, &c. mentioned in defendant W. B. Mitchell’s answer. As to the first point respecting the time agreed upon for payment of the negroes. In all cases when a bill is brought for discovery and to compel specific performance of an agreement, the complainant being deficient in proof, defendant’s answer must be held as true, so far as respects the agreement; unless contradicted by two witnesses or one witness, and some strong corroborating' circumstances. In this case the defendant, W. B. Mitchell has positively denied that he agreed to pay for the negroes in three years, but that the time agreed upon was five years; and to corroborate his answer he refers to an exhibit filed with it being, a list of negroes delivered him by complainant, wherein the terms of payment for the said negroes are specified; in which list it is mentioned that the amount of one third of the purchase money of 144 negroes with interest to 1st April 1795 is 37751. 4s. and immediately under it is said, one fifth of the principal with interest of the negroes is 2588l. from which circumstance, and because on the same paper the terms of payment for the land are altered from five to six years, the defendant has sworn positively that the agreement was five and not three years. It must here he observed that a list of the *482 negroes actually sold and delivered to tlie defendants is filed with the bill; and on that paper the terms of payment are said to be three years for the negroes, and six years f°r the land. Whether such a list was ever delivered to the defendant has not appeared; neither of the lists are dated. That referred to by defendant’s answer is signed by complainant, the other is not, though both are in his hand writing; so that the court might make choice of either, if the defendant had not sworn so positively that the instalments agreed on were five years. The defendant has likewise sworn that 40001. and no more was to be paid for the first instalment, in which he is confirmed by complainant’s own memorandum on the list exhibited with his bill. That sum however is rather more than the instalment of one fifth of the purchase lnoney of the negroes with interest, and a sixth of the, land; at the same time that it is 1300Z. less than a third part. This business has been very loosely conducted. There appears to have been various propositions on the subject. All the papers are in complainant’s hand writing. The court can only determine on what has been positively sworn to, which is that the agreement was for five years’ instalment; and the list referred to by the answer, seems to warrant the conclusion. The complainant perhaps may think it hard to be kept longer out of his money than he intended or thought he had stipulated for; but it is the unavoidable consequence of his own improvident conduct, in parting with the possession of so large and valuable a property without taking the precaution which every prudent man should do, of reducing the agreement to writing and completing his contract at once. The second point for determination is whether any deduction is to be made on account of the injury the defendants have sustained by the loss of crop and the death of negroes. If this question had depended and was to be determined solely on defendant’s answer without proof, the complainant would have been in a very unfortunate situation. For the defendant, W. B. Mitchell has sworn that the complainant warranted the land to be perfectly free from all freshes and the negroes free from all dis • *483 eases. The defendant’s answer in this particular cannot be taken as sufficient evidence against complainant to charge him with such a warranty. If there had been one, it is probable he had it inserted in the deeds, which his own counsel drew; and tiiose deeds must have been produced to shew what was the agreement. That has not been done, and therefore the court must conclude there was not such a warranty. Indeed it is not reasonable to suppose the complainant would have been so rash as to warrant against all freshes, when it is a matter notorious that there are very few swamp plantations that can be. said to be above all freshes. A variety of witnesses have been examined to prove this land liable to freshes, and the negroes unsound, &c. &c. The substance of their testimony however respecting the land is that the land is of the first quality; that it would be returned as such on oath to the tax collectors; that it is as good as any on the river; and it has the best banks of any plantation on the river one only excepted; that very good crops are usually made on it; that it is not generally subject to freshes; that it was overflowed in 1786; the banks were then had; they have been made entirely new since, and no fresh has gone over them from that period till the year 1794. Mil Hamilton declares he had sold a plantation opposite, containing only 220 acres for 4000Í. The land in question is 550 acres and was sold for 94001. That the soil of Hamilton’s tract was by no means so good, and the banks very inferior to those of the plantation in question; and that the land is not in the least injured by the fresh. CoL M’Pherson has offered the same price for the land and negroes, which was given by defendant; and that since the fresh of 1794, he offered defendant, W. B. Mitchell 5001. for the bargain. "With respect to the negroes all the witnesses swear that they are a prime gang, are as orderly as most negroes and as good as any for work; there are more workers than are usually found in so large a number. There are some who are not altogether sound; but yet generally do their tasks when they work. As to those children that died with the whooping cough; from the evidence of Mrs. Strain it appears that one child died the *484 day it was landed; and none of the others were then apparently infected with it; five or six had it afterwards and died; they were from two to three years old. To rebut her testimony, Palmer, the complainant’s overseer at Rocky Point, swore the child had not the disease when it was sent from thence; and the negroes would not have been sent to defendant if he had not sent his boat for them. From this summary view of the evidence then, it is manifest that it is not so hard a bargain a¡? it has been represented to be. The land is equal in value to any tide swamp to the southward, as far as Savannah river; that it is not generally subject to freshes; and the banks are the best but one on the river. Indeed defendant’s own counsel candidly acknowledged that it was a very valuable plantation. The negroes are a prime gang, and as valu-ble as any one consisting of such a number; and it is well known there will always he some indifferent ones among so large a number; and the same price has been since offered for this property. It is to be observed that in this case the application to purchase was made by the defendant to complainant and not offered for sale by complainant to defendant; nor is there the slightest imputation of any unfair conduct on complainant’s part. The contract was not hastily entered into; a month having elapsed from the first offer to the conclusion of the agreement; so that the defendant had full time for investigation, to deliberate and consult with his friends upon the business. . He saw or might have seen all the n eg retes before he purchased. He picked them out from different gangs. If therefore he made a bad choice, he has no one to blame hut himself. On this point the court considering the whole evidence that has been offered, are clearly of opinion that there is no such deterioration of the property, as should induce a deduction or abatement from the purchase money, except as to one negro who was under Dr. 0. Driscoll’s care, for a complaint in her nose, which was of a nature not always visible. Had there appeared any thing like fraud, circumvention or surprise in this transaction, on the part of complainant; if the contract bore the semblance of unfairness, injustice, unreasonable *485 ness, or uncertainty in any part of it, the court would undoubtedly have refused to lend its aid to the completion of it. But as the principal parts of the agreement are admitted, as it is acknowledged that the offer to purchase was made by the defendant; that they are in the full possession and enjoyment of the whole property, and have been so for two years past; as defendant, W. B. Mitchell was in possession of a plantation nearly adjoining the one now in controversy, that he must have known the situation of the land he was about to purchase, with respect to its liability to freshes full as well as the complainant, and therefore had no need of information from him on that subject; as the defendant himself saw and made choice of the negroes ho bought — as exorbitancy of price is not made a ground in his answer for refusal to fulfil the agreement, (and if it was the repeated offer of colonel M’Phcrson is sufficient proof to the contrary) and above all as the defendants themselves are not disposed to relinquish their bargain, hard as it has been represented to be by their counsel; the court cannot hesitate to decree a specific performance of this agreement.
It is therefore ordered and decreed that the complainant do forthwith make, execute and deliver to the defendant good and sufficient conveyances in trust for the land and negroes agreed by him to he sold as .in bill mentioned. That the said defendant do thereupon pay to the said complainant, one fifth part of the purchase money for the said negroes with instalments from the first of April, 1794, to the first of April, 1795 — that they do also pay to the complainant one sixth part of the purchase money of the land; that they do likewise pay to complainant interest on the principal sums of such fifth and sixth parts of the purchase money from first of April, 1795; and that it he referred to the master to ascertain the same. It is also ordered and decreed, that the defendants, W. B. Mitchell and J. Mitchell, under the direction of the master, do forthwith give bonds to complainant for the balance of the purchase money payable with interest at such times as they ought respectively to become due, pursuant to their agreement; and that for securing payment of the *486 said purchase money with interest, they do, in the terms of their said agreement (as sworn to by defendant, W. B. Mitchell in his answer) make and execute, under the direction of the master, good and sufficient mortgages of all the lands and negroes in the said answer particularly mentioned and enumerated; and lastly that the defendant do pay the costs of this suit.